1-6-2308 and Tom Delaney v. Town of Abington, Illinois. Good morning. Tony Hightower for the event with Tom Delaney. May I proceed? You may. Thank you, Your Honor. Your Honor, this is a case that's on appeal to this court from the District of Massachusetts. A decision was written on summary judgment dismissing all the claims. Two issues are presented on appeal. One is over-encompassing, encompasses most of the issues, which is the court's ruling on summary judgment. Could you pull that mic a little closer to yourself, please? There was also a ruling that's at issue, a discovery ruling that concerns a motion to quash that was allowed by the judge as it pertains to communications between the Attorney General's office, my client, and the appellees in this case. Okay, I reveal that as for abuse of discretion. That's correct. You certainly have an uphill battle to show abuse of discretion. Is your summary judgment argument dependent on showing that abuse of discretion? Well, based on how the decision came down, Your Honor... Yes or no? I would say it's not entirely dependent on it. I would say it's not entirely dependent on it, Judge, and I'd just like to explain why. Because in the court's decision, what the judge ruled was that the appellees conceded that there was some sort of communication between themselves and the Attorney General's office, such as to warrant the meeting that they previously denied happened. And so this was a concession that only happened in oral argument. It is an opposite to the sworn deposition testimony. I thought it was uncontested that as of the second filing with the Attorney General's office, that the second filing was brought to the attention of the town official. That part is uncontested. However, there was a previous filing back in April of the same year that prompted a meeting between Chief Majewski, one of the appellees, and my client. Are you saying that they conceded at oral argument that they had notice of the first? Yes. Yes. Is there a transcript of that oral argument? Yes, there is, Judge, and the transcript is part of the record. That was actually brief. That's one of the genuine issues of material fact. Because if the appellees are contesting whether or not a meeting happened, then that is where threats were made, where my client felt in fear for his child, where he felt that he was economically coerced. Okay. Between the first filing and the second filing, doesn't the district court judge find that the only incident does not amount to retaliation and could not reasonably be taken to have... What is it you're saying was the retaliatory event? So certainly. So there were a number of... Between the two. No. Just between the two. Well, in terms of the time frame, Judge, between the two filings, I believe immediately after the first filing happened, the number one, threats were made to my client. So I would say that's a statutory retaliation. What do you mean threats? Don't use language like that. What is the incident? I'll give you the specifics. The chief told Mr. Delaney that those that go against me lose the battle. I always win the war. But even after that, that didn't translate into anything that looks like retaliation, at least if you look at the record that we have. Well, I'll try to explain with my example. Sorry, Judge. So I believe immediately after this meeting, my client, an individual, who was on his shift, I believe, were given essentially what we consider as punishment duty. They were told to go to the Abingdon High School, to sit there and to... But that wasn't just him. There were other people who went to the high school. They were sent there because that was a traffic issue and it was a routine assignment which they were given. Your Honor, respectfully, that's incorrect. That was not a routine assignment. In particular, it was communicated by virtue of the record that that assignment was going to be given because the officers did not want to write traffic tickets. So it was a punishment assignment for them to go there to wayside where their reports would stack up and all the other work would be backlogged. But there has to be retaliation for them filing with the AG, not for not writing the tickets. Well, that is in response to my client filing the AG. But the other people who were not writing tickets also had to go and they didn't file with the AG. That's correct, Your Honor. So how do we know he was being... What's the basis for thinking that the fact that all of these people who weren't writing tickets were assigned to Abingdon High School were being assigned there because he had filed with the AG? That doesn't seem very plausible to me. Well, prior to this happening, that was never an assignment. And the state was saying... It's not for any of them. It's not for any of them. Not to go there, to sit there... But he's the only one that filed with the AG. What they all had in common was that they all weren't writing tickets. So the normal inference would be they were all sent there because they weren't writing tickets, just as you said, but if that's why they were sent there, it doesn't help you because they have to have been sent there because he filed with the AG. What's the indication that that was the reason they were sent there? In terms of the meeting that happened, and so this goes back to the facts, in terms of the disputed facts, in terms of when the meeting happened and what was said. So during that particular meeting, my client, and I've highlighted this inside of my brief, what sections pertain to it, there was a discussion where it was clearly indicated to my client that Chief Wojcicki was aware of the filing. But when was he sent to the high school? Right after that. So I believe the punishment duty happened very soon after that. The officers were assigned to go to the high school for the punishment duty. But you seem not to be addressing the point that he wasn't the only one sent there. Okay. A bunch of people were sent there. Yes. And you don't deny that it's a legitimate police objective, if you will, to control traffic around a high school. Well, Judge, I actually do. In my brief, I have cited decisions, appellate decisions, that discuss how discretion can be abused under the auspice of legitimate activities. But I don't see the connection that you're trying to make. This becomes a routine event, and you say that it never happened before. Is there anything in the record, one way or the other, about whether they had done this detail at the high school? Are you saying that there had never been a detail at the high school? The first detail was after this incident with the Chief? That's correct, Judge. And further to that point, what I'd like to say is there was a motion to strike that was actually filed, where subsequent to discovery being complete, the appellees actually tried to introduce a document to try to counter the very same point that I'm making, which is that there were never any assignments of this nature prior to my client appearing at the Attorney General's office to file this AG complaint. What is the significance in your view, or why is there no significance to the fact that people who did not file with the AG were also sent to the high school to be punished? Certainly. So that circles back to other issues in the case, and I'll address them directly. Part of what we allege is the retaliation against my client is the pressure that was placed on him to try to conform with this ticket quota system that was in the town of Appleton. And so by virtue of isolating him from his peers... But that can't be, that's not impermissible. That's not unlawful to pressure him to do that, or any of your claims. The only claim you bring, I thought, was they can't retaliate for him taking First Amendment-protected activity, or something protected by the whistleblower statute, which is going to the AG. That's correct. But none of the claims you say you bring make it unlawful to have pressured him into writing tickets. It may be that you're not allowed to do it, it may be... None of your claims allege that the illegality that you're trying to recover for was pressuring him to write tickets. It's retaliating against him for filing with the AG, I thought, or the union activity. Well, that's part of it, but there's also the last claim, which was never addressed by the court on summary judgment. In the record... Which is that claim? That would be the... If I could just go to... This is the claim that... Put that claim aside for a second, just with respect to all the other claims, in which the harm alleged is the retaliation for the filing with the AG or the union activity. How can the fact that people were also sent with him to school, to the high school, who were not known to have done any filing, help your case? I just don't get that. I actually briefed this as part of the isolation from his peers, and I briefed that, I believe, in the context of the 1983 claim. And so there is some language in the brief that particularly goes through the things that happened, such as... You know, you're wasting your time to talk about, I argued it in the brief. Answer the question. So it would be in the form of isolating my client from his peers in the context of the 1983 claim. Because he's part of a group of officers who are sent? No, to put pressure on him as the person who was not conforming with the ticket quota system. But why would the other people be sent there also? Because they are being punished for what he has done. So they're being punished for what he's done? For what he's done, Judge. And that's where the isolation comes in. They sought to look at him as the problem for the reason why the Chief is disabling certain actions towards him. They could have looked at him as a problem very seriously because they elected him twice to be head of their union. Well, if they were angry at him for this reason, why would they have elected him to represent them? Well, that issue was not raised by anyone below, Your Honor, respectfully. But in terms of answering the question, individuals that did elect him were retaliated against. And there's testimony in the record as to that. Mr. Page was demoted. Other individuals that went against my client in the election were promoted. So speaking to that point, there was a risk associated with backing my client, Judge. And that goes back to this isolation of the peers from this peers issue. There were threats that if my client was re-elected, they would punch back. So your position is it would be reasonable for a jury to conclude that no one would have been sent to the high school for that duty unless he had made that filing? That's correct. But it's a little hard to square that with earlier you said the reason they were sent there was to pressure them to write tickets. Well, let me backtrack just so I can understand what Your Honor's point is. My point in making the argument is that that is to put pressure on my client. It's not so much in terms of the other individuals, what they're doing, they're writing tickets. Our case, the case was not about the other individuals writing tickets. It's about my client being retaliated against for going, for exercising what he believed was acting upon a reasonable belief, going to the Attorney General's office to speak of acts that he believed were criminal. And that is one of the overarching issues in this case, I think, is that the court below went into what the reasonable belief was of my client. Typically, that's a jury issue. If you look at the large case, if you look at the Trichon case, clearly an officer can look at it. There's a difference between a motion to dismiss and a motion for summary judgment. There is, but in the context of the legal elements, Judge, where the court- And you'll agree it's both a subjective reasonable belief and an objective reasonable belief? Yes, yes, but even so- And Judge Stern said you failed the objective reasonable belief test because no jury could possibly think that these actions violated the state anti-bribery statute. Well, he did, and to that point, I'd like to address the basis of that. So the judge actually, in his opinion, said that no reasonable juror would believe that these legitimate processes were criminal. However, the basis of his belief that the processes were legitimate was actually incorrect. Under the statute of Massachusetts, only the officer issuing the citation can decide if it's a fine, a warning, or a criminal sanction. A blot may be, and I've read this state appeals court decision that he relies on, but what does that have to do with bribery? Because- It's a totally different thing. It's an allocation of power between the police chief and the individual officer. Yes. But that's not bribery. Can I address the point, Your Honor? The statute, the bribery statute of Massachusetts says that no one, that's superiors, police officers included, can give anything of value to a public official to have them do something that's inconsistent with their duties. But that can go to the public, the fine goes into the general fund. It goes to the general fund. However, this is the point before you get there, Judge, is that the officers were receiving overtime compensation and being promoted for writing more tickets than not. That is the issue. So the inducement was you get the overtime if you go out and write a majority of fine citations. That's in contravention of the plain language of the Massachusetts statute and the case, the citing that issue, the Newton case. Does the record show that he, prior to the litigation, was of the view that there was a violation of the mass bribery laws? Prior to the litigation? Yeah. Yes, he filed a whistleblower complaint. No, no, I know he filed a whistleblower complaint. But is there anything that indicates that the reason he did so was because he thought there was bribery going on? Does the whistleblower complaint say that? It does. The whistleblower complaint says that, but the whistleblower complaint only really encompasses what was happening prior to that. The whistleblower complaint says that the reason he's blowing the whistle is because he thinks there's a violation of the bribery law? That's correct. He cites it inside of his whistleblower complaint. That's part of the record.  Thank you, counsel. Good morning, your honors. My name is Debra Ecker, and I represent the appellees. I do want to address first one point made by my brother. There was never any concession on the record that on April 9, 2014, the chief, the deputy chief, or anyone in the Abington Police Department were aware that Mr. Delaney, Officer Delaney, had filed a complaint with the Attorney General's office. The town appellees continue to deny that. What was conceded and has always been admitted by the chief was that there was a meeting on April 9, 2014. There was a meeting. The chief does not recall the content of the meeting, but he believes it was to discuss union issues. Officer Delaney, at the time, had just come into the role as head of the union. Maybe I misunderstood, counsel. I thought he was saying what there was a concession about is that there had been contact between the AG's office and the police department. There was no concession. As to contact? There's never been contact between the Attorney General's office and the Abington Police Department, the chief or the deputy chief lieutenant. Did the Attorney General's office lose that first complaint? That's my understanding as you read the record. How did they know to contact him to refile a complaint? Officer Delaney kept contact in the Attorney General's office. And that's in the record and what has been filed by the Assistant Attorney General here today. So the first time that my clients become aware that the AG complaint is when it's refiled, in October 2014, that is because at that time, Officer Delaney hands it to the town manager, and the town manager does immediately bring it to the chief's attention. So there can be no retaliation between that period of time. The district court below us... What do you say to their argument that if there was adverse employment action taken against the plaintiff during that period of time, that a jury could infer from that that there must have been knowledge? Well, one, on to your point, it wasn't only against Officer Delaney. So the timing of the assignment to the high school, and this is in the record, is important. Officer Delaney was not on the shift initially that was assigned to the high school. The assignment was made, and in the record you'll see this is not the first time officers have been assigned to the high school. It was not the last time officers are assigned to the high school. Does the record show that there were prior assignments to the high school? Your brother said there were none, and this was the first time. The record does show that, that there were prior assignments, and the record also shows there were subsequent assignments. And there had been a motion to strike, and I believe it was denied by the lower court. Does that help you or hurt you? Does the record show that this was the first time Delaney had ever been assigned to the high school? That I don't know, Your Honor. But he had bid on to the shift when it had already been assigned to the high school. But had all those other people been assigned to it in the past? I don't know the particular officers. I know officers have been assigned. The record is just blank on that question? It is, it is. If I understand it correctly, the officers could sort of bid for shifts, is that? They absolutely do, pursuant to the collective bargaining agreement. And so Officer Delaney, each time he has bid for shifts, has bid pursuant to the collective bargaining agreement, he's actually senior and has never challenged any shift that he's been given until he was assigned to the court prosecutor position. And that occurred after my clients were aware that he had filed the... Does that mean he was assigned to the high school because he bid to be assigned to the high school? He bid to the shift that was assigned to the high school, yes. And then he bid off that shift later on. So that was a voluntary assignment. So the first time my clients learned that he... By the way, there's no evidence that he was denied shifts that he chose because of this controversy. He was never denied a shift that he chose. In fact, he was senior. And if he had been and it had violated the union contract, he could have filed a grievance. And that was never done. And I'm sure he would have done that. So he was on the shifts all along that he had bid for until he was assigned the court prosecutor position. And so he has that as an adverse action after my clients become aware that he has filed an attorney general complaint. But he testified himself, and again, it's in the record, that this is a coveted position, and it is within the department. The chief assigned him to the position.  In fact, you can earn more money in doing it. Did he earn overtime when he was in that position? Because that's another one of the issues which is raised is the overtime. He did earn overtime, and the record reflects that actually each year he continued to earn more overtime. And so he could bid for it. And if you're aware, the collective bargaining agreements have a procedure in which overtime is bid once it's posted. He chose, and that was in the record as well, not to bid for certain overtime assignments for whatever reason. But the record definitely reflects that his compensation from overtime continued to increase, even when he was in the court prosecutor position. The chief, true to his word, when he decided a year later he didn't want him, took him off the court prosecutor position, and he bid for a shift and got the shift that he wanted. So again, there's no adverse action, even after my clients learned of the whistleblowing activity, so to speak. So the district court in dismissing the whistleblower claim did so on the notice issue, but the court did address whether there was adverse action when it dismissed the First Amendment issue and applied the lower standard, correctly so, corrected my analysis of it. And so I would propose, Your Honor. The lower standard. Well, a standard under the First Amendment, right, versus that under the burden shifting that applies in the whistleblower. Okay. Okay. So, and still dismissed it on that, finding that there was no adverse action. The only thing that happened afterwards and after they found out were an email from the deputy after a union meeting, which was not a written warning, but just cautioned the officer to be careful in his tone of voice, essentially, but also said that he should feel free to raise his concerns, et cetera. In addition, there were two written warnings, who was being tardy, and again, a suspension, but the district court probably found one, there was no causal connection. What about the state whistleblower claim? Why should we send that back to the Commonwealth to make that determination? Well, because I think it was probably made by the district court below. I don't think there's any need to do that. I think the decision was sound in the law. I don't think it's an issue of law. His protected activity was the filing with the attorney general's complaint. He's always argued that. And it's clear-cut that he needed to provide a written notice to my clients prior to going to a public body, disclosing to the public body. He did not do so. Well, is it a question of whether the notice that he gave, he says, was adequate under the Massachusetts decisions? So why would it be appropriate to let the Massachusetts courts look at that? Because I think even the first... Because there seems to be a problem there. Even the first circuit decisions that have decided in the recent decision that was decided, there was no written notice. There was nothing he could point to other than he believed, during this April 9th meeting, that the chief knew. And also because 10 months earlier he claims he gave a general order to his sergeant on the shift when there was this two-week assignment regarding enhancing traffic enforcement. That was 10 months before he went to the attorney general? That was 10 months before. And it was a two-week assignment. So there is no... And the whistleblower complaint counsel has represented to us that it invoked the state bribery statute and explained his theories about why there was a violation. What is your version of what's in that whistleblower complaint? So the whistleblower claimant is lengthy. It does have the statute at the very end. It never mentions bribery. And it doesn't... What is it that has the statute? It just says it's a violation of Chapter 268A at the very end. And that's the chapter that has the bribery provision in it? Correct. Is there anything in it that could conceivably be relevant in Chapter 268A? There's nothing. Because the rest of the... So why wouldn't that be consistent with what he's saying, that he was pointing to the bribery statute? He was, but in the pages and pages of the explanation as to why he was at the Attorney General's office was this issue with having to write more tickets. And he attaches articles from the local paper about the chief not producing documents regarding to the press, how many traffic enforcement... More specifically, the district court judge here sort of teased out two theories of violation of the bribery statute. Is that contained in the whistleblower complaint? That is not. And actually, that wasn't even contained in the summary judgment motion, the opposition to our motion that was filed. The district court assisted him in teasing out those... Can I just ask how the statute works? If you think there's a crime, but you're wrong, in other words, you have a more expansive view of how to read the state bribery statute than in fact exists, what is the significance of that mistaken view of there being a crime for purposes of whether you qualify or don't under the whistleblower statute? Right. That was addressed before. We reasonably believe there was a crime. So there's a subjective and an objective component. The district court clearly found correctly that objectively no one can find... It doesn't matter. In your view, it doesn't matter whether he mentioned it or not. It doesn't matter. No. But do you have a view about whether he subjectively had a view? Because obviously he... I don't think... In my opinion, I don't think he subjectively believed that it was bribery. I think he's stuck on this issue that they can't tell us to write more traffic enforcement tickets in the Newton case. Just last question. What do you think the significance of the reference to Chapter 268A is in the complaint, whistleblower complaint? I think you... I don't know. Okay. Because it's a voluminous complaint and it's just stuck at the end and there's nothing in there to discuss bribery whatsoever. Okay. Thank you, Your Honors. Yes. You're for the town? The state. Sorry, the state. I'm sorry. May it please the Court. Assistant Attorney General Todd Bloom from Massachusetts Attorney General's Office. Okay. Please speak up. Yes, Your Honor. Your Honors, in light of what has already been provided to counsel through the document production in this case and the extent to which any testimony would be restricted by certain privileges, the District Court did not abuse its discretion in granting the motion to quash. If I may briefly, counsel made a public records request to the Attorney General's Office in May of 2015 for information regarding his complaint, and he sent documents the Attorney General's Office sent to the town regarding his complaint and documents received from the town. And the General Counsel's Office of the Attorney General's Office provided him a two-page letter as well as a declination letter from the Criminal Bureau dated April 2, 2014, as well as his 118-page complaint back to him and an email correspondence between Mr. Delaney and the Attorney General's Office. Regarding the subpoena Duces-Tekun filed in the District Court, the AG's Office consulted with the General Counsel's Office to make sure they had all the responsive documents regarding that subpoena and provided certified copies of non-privileged records. These were the same public records request documents, the same complaint, the same declination letter from the Criminal Bureau, and the same email correspondence between Mr. Delaney and the AGO. And we also withheld privileged documents and submitted a privileged log of sufficient detail, and I would submit that Mr. Delaney has not shown there was a waiver based on that privileged log and that the log speaks for itself. He has not established that there was any disclosure of any protected information to a third party or that there was a refusal to comply with a court order. So turning to the deposition subpoena at issue in this case, clearly portions of the communications he sought were privileged, but to the extent any small amount of information wouldn't have been privileged, I would submit that he could have gotten it from the other sources. And he, in fact, sought to establish the town's knowledge of the Attorney General's Office complaint through the discovery in the case, and he was able to seek this discovery from the defendants. He deposed the Chief and Deputy Chief, and the judge found that there was no direct evidence that the defendants had learned of the complaint. And again, they conceded that they learned of the complaint to the Attorney General's Office in October 2014. This was established through depositions and the Chief's answers to the first set of interrogatories. It was established that he did not know about it until the town manager told him Delaney had come to his office and given him the complaint. So I would just submit that the Attorney General's Office, based on Schedule A, had nothing to offer at a deposition that had not already been provided to counsel by that point. If there are no further questions, I will rest on my brief. Thank you. Thank you.